IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGELINA SILVA DURAN and<br>IAN C. PEREZ TOLEDO<br>Plaintiffs,<br><br>v.<br><br>BURLINGTON COAT FACTORY OF<br>PUERTO RICO LLC, et al.<br>Defendants. | Civil No. 24-1193 (FAB) |

**REPORT AND RECOMMENDATION**

Pending before the Court is Defendants Burlington Coat Factory of Puerto Rico LLC's ("Burlington") and Burlington Coat Factory Warehouse Corporation's (jointly, "Defendants") Motion to Compel Arbitration and Stay the Proceedings. Docket No. 5. Plaintiffs filed an opposition. Docket No. 9. Defendants replied. Docket No. 12. Plaintiffs sur-replied. Docket No. 16-1. The matter was referred to me for a Report and Recommendation. Docket Nos. 6, 15. After considering the parties' submissions, the applicable law, and deeming that there are no disputes as to the material facts on the matter of arbitration, I recommend that Defendants' motion at Docket No. 5 be **GRANTED** and that the case stayed pending arbitration.

### I.    Background

On April 26, 2024, Plaintiffs filed the instant action. Plaintiffs allege that Ms. Silva Durán began employment as a part time Cashier Associate at the Burlington Outlet Store in Canóvanas on April 15, 2021. Docket No. 1 at p. 3. Ms. Silva Durán regularly worked 20-25 hours per week, except for the three weeks before Christmas, when she would work 40 hours per week. Id. at p. 4. Ms. Silva Durán became aware that she was pregnant in January 2023. That same month she informed her supervisor of her pregnancy. Id. at pp. 3-4. As alleged, during the months of June through August 2023, her work hours were significantly reduced but others, including male employees, continued to work their regular hours. Id. at p. 4. In August 2023, she learned that she was no longer in Burlington's payroll. Id. at p. 4. She gave birth on August 31, 2023, and on

September 1, 2023, received payment of $125.00 from Burlington. Id. at p. 5. When she inquired about the payment, Ms. Silva Durán was informed that it was on account of liquidation of employment. Id. Ms. Silva Durán filed the instant case seeking relief for gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(k), 2000e-2. She has asserted supplemental jurisdiction and additional relief under Puerto Rico Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29 §§ 146-151 ("Law 100") and Law No. 3 of March 13, 1942, as amended, P.R. Laws Ann. tit. 29 §§ 467-474 ("Law 3"). Ms. Silva Durán and her partner, Ian Pérez-Toledo, request damages suffered on account of the purported discrimination suffered by Ms. Silva Durán. Id. at p. 6.

Defendants moved to compel arbitration and to stay the proceedings. Docket No. 5. In support of their request, Defendants submitted an Unsworn Declaration under Penalty of Perjury by Ms. Ann Keefe, Vice President Stores Human Resources Support of Burlington Coat Factory Warehouse Corporation. Docket No. 5-1. One of Ms. Keefe's duties is to oversee the administration of Burlington's STEPS program, and she has access to Burlington's STEPS program business records and documentation, including those that pertain to Ms. Silva Durán. Id. Ms. Keefe explains that the STEPS program is a dispute resolution program, designed to provide employees multiple opportunities to resolve individual workplace disputes. Id. at ¶ 7. The STEPS program provides employees a three-step process to submit their workplace disputes for resolution. Id. at ¶ 8. Employees can exhaust Steps 1 and 2 first or proceed to Step 3 directly. Id. at ¶ 11. Step 3 applies when the dispute is not successfully resolved in Steps 1 and 2. At that point, employees may request arbitration. Id. at ¶ 11. Ms. Keefe asserts that Ms. Silva Durán was employed by Burlington, a subsidiary of Burlington Stores, Inc., and that all Burlington employees are enrolled in the STEPS program as a condition of their employment. Id. at ¶¶ 3, 5, 12. But employees may opt-out of the Step 3 arbitration. Id. Employees receive information about the STEPS program through Burlington's electronic hiring and onboarding process. Id. at ¶ 14. From her review of Ms. Silva Durán's employment records, Ms. Keefe certifies that Ms. Silva Durán received information and documentation related to the STEPS program through Burlington's electronic hiring and onboarding process. Id. at ¶ 15.

Burlington's hiring and onboarding process is done electronically. Id. at ¶ 16. Applicants submit their employment application online and provide a personal email address to which Burlington sends information related to the hiring and onboarding process. Id. Once an employee

is hired to work at Burlington, she is given a unique log-in username and password to enter the Workday platform, which is Burlington's employee management system. Id. at ¶¶ 17-18. In that platform new hires receive and are required to complete new hire documentation. Id. It is through that platform that employees receive their unique assigned employment ID and are instructed to create a new and personal password after the initial sign-in. Id. at ¶¶ 18-19. As part of the onboarding process for new hires at Burlington, employees receive access to an overview of the STEPS program, which includes a summary of Step 3. The summary explains that Step 3 involves submitting legal claims to arbitration, rather than to a judge, and that unless the employee chooses to opt-out of the arbitration program within the required period, the employee will be covered by the arbitration program throughout the entire term of their employment with Burlington and even after conclusion of their employment. Id. at ¶¶ 20-23; Docket No. 5-4. Employees are then instructed to click on the "Your Onboarding Checklist" and complete every task. Id. at ¶ 25. Employees are instructed to review and provide electronic acknowledgment of receipt of certain documents, including STEPS Programs Materials. Id. The STEPS Program Materials include the Early Dispute Resolution Program Rules & Procedures, STEPS Program brochure, and Arbitration Opt-Out Form. Id. at ¶ 28. All of these are available in English and Spanish. Id. These may be saved by employees as pdf documents in their personal computers and may also be accessed by employees at any time through the Workday platform. Id. at ¶¶ 26-27.

   The STEPS Program brochure provides an overview of the three steps and reminds employees that they need to opt-out of STEPS or will be automatically enrolled in the program. Id. at ¶ 29. The Early Dispute Resolution Program Rules & Procedures also provides an explanation of the three steps and outlines the steps a new employee must take to opt-out of arbitration. Id. at ¶ 30. The arbitration agreement in the Early Dispute Resolution Program Rules & Procedures provides that arbitration is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., and covers all Burlington employees who have accepted or continued to work with Burlington after the effective date of the agreement— October 28, 2016— and those who do not return the opt-out form within the prescribed time limit. Docket No. 5-6 at Step 3 ¶¶ 1-2, 3b. It also states that arbitration applies to "any dispute arising out of or related to your employment with or termination from the Company (including any dispute against any officer, director or alleged agent of the Company), regardless of its date of accrual and survives after the employment relationship terminates." Id. at ¶ 3. It includes the following examples of covered claims: "disputes

arising out of or related to the employment relationship or the termination of that relationship, […] termination, discrimination or harassment and claims arising under […] Title VII of the Civil Rights Act of 1964 […], state or municipal statutes or regulation addressing the same or similar subject matters, and all other federal, state or municipal legal claims arising out of or relating to your employment or the termination of employment […]." Id. at ¶ 3a. Paragraph 15 of the Step 3 section further explains employees' right to opt-out of arbitration. Id. at ¶ 15. It clarifies that arbitration is not a mandatory condition of employment. Id. But that any employee who does not wish to be bound by arbitration needs to opt-out of arbitration by submitting a signed and dated Arbitration Opt-Out Form to the STEPS office within 30 days from the date of receipt of the arbitration rules and procedure. Id. If employees do not submit the opt-out form within the required timeline, the employee will be deemed to have accepted the agreement to arbitration. Id. The Arbitration Opt-Out Form is provided to employees with the STEPS brochure and the Early Dispute Resolution Program Rules & Procedures, it is also available to employees in the employee portal, and it reminds employees of the timeline for signing and returning the opt-out form. Docket No. 5-1 at ¶¶ 37-38.

As declared by Ms. Keefe, the arbitration agreement is binding on the employee and Burlington, so long as the employee does not opt-out of arbitration. Id. at ¶ 31. Employees are required to electronically acknowledge receipt of the STEPS materials and to sign a statement in which the employee acknowledges that, unless she opts-out by the applicable deadline, she will be bound by the arbitration provisions of the Early Dispute Resolution Program Rules & Procedures. Id. at ¶ 40. The employee is further advised that by clicking "I Agree," she is legally bound by that signature. Id. at ¶¶ 40-42. An employee cannot complete the new hire onboarding process until she acknowledges receipt of the STEPS programs materials. Id. at ¶ 43. As declared by Ms. Keefe, Burlington's records show that Ms. Silva Durán completed her new hire onboarding in the Workday platform and electronically signed the acknowledgment of receipt of the STEPS Program Materials on April 15, 2021. Id. at ¶ 46; Docket No. 5-7 at p. 2. Burlington did not receive a signed opt-out form from Ms. Silva Durán. Id. at ¶¶ 47-48.

Plaintiffs opposed the motion to compel at Docket No. 9. Plaintiffs argue that Ms. Silva Durán does not understand English; only Spanish. Plaintiffs also argue that Defendants have not presented evidence that Ms. Silva Durán signed the arbitration agreement and that Ms. Silva Durán was no longer an employee of Burlington when she filed the instant complaint so her claims are

Silva Durán, et al. v. Burlington Coat Factory of Puerto Rico LLC,
Civil No. 24-1193 (FAB)

not covered by the arbitration agreement. Id. Relying on cases of the Puerto Rico Supreme Court, Plaintiffs also argue that Ms. Silva Durán may seek judicial redress for her claims under Title VII and Law 100 and is not obligated to exhaust arbitration. Id. Plaintiffs have also submitted a sur-reply at Docket No. 16-1, which repeats the arguments set forth in the opposition. Defendants disagree with all of Plaintiffs' arguments and insist on the enforcement of the arbitration agreement.

## II.    Discussion

Pursuant to the Federal Arbitration Act, agreements to submit controversies to arbitration are valid and enforceable except in extraordinary circumstances. 9 U.S.C. § 2. This provision extends to employment contracts. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 122-123 (2001). As such, when one of the parties to an employment contract seeks enforcement of the parties' agreement to arbitrate and has established that the issues before the Court are covered by the arbitration provision of the agreement, the Court is required stay judicial proceedings to allow the parties to exhaust arbitration. 9 U.S.C. § 3. The Federal Arbitration Act reflects a liberal policy in favor of arbitration. Campbell v. General Dynamics Government Systems Corp., 407 F.3d 546, 551 (1st Cir. 2005).

A party seeking to compel the enforcement of an arbitration agreement must establish: (1) the existence of a valid agreement to arbitrate, (2) that the movant is entitled to invoke such an arbitration clause, (3) that the non-movant is bound by the agreement to arbitrate, and (4) that the claims at issue are within the scope of the arbitration agreement. Soto v. State Industrial Products, Inc., 642 F.3d 67, 72 (1st Cir. 2011) (citations omitted); Jorge-Colón v. Mandara Spa Puerto Rico, Inc., 685 F.Supp.2d 280, 283 (D.P.R. Feb. 18, 2010) (string citations omitted): Caguas Satellite Corp. v. EchoStar Satellite LLC, 824 F.Supp.2d 309, 312 (D.P.R. Nov. 8, 2011). Once the moving party has presented evidence to establish these four factors, the opposing party cannot rest on allegations to avoid the enforcement of the arbitration provision. The opposing party must identify specific evidence in the record to demonstrate that there is a factual dispute as to the arbitrability of the controversies posed. Casale v. Ecolab Inc., 585 F.Supp.3d 99, 104 (D.Me. 2022); see e.g., García-Clara v. AIG Insurance Company Puerto Rico, 2016 WL 1261058 *4 (D.P.R. Mar. 29, 2016) (movant presented affidavit of person with knowledge of employee relations and custody of employment records and opposing party failed to present an affidavit to counter the evidence of the movant; arbitration provision enforced).

I look to Puerto Rico law to determine whether a valid arbitration agreement exists between Burlington and Ms. Silva Durán. Soto, 642 F.3d at 72 (citations omitted); Jorge-Colón, 685 F.Supp.2d at 284; Caguas Satellite, 824 F.Supp.2d at 313. Under the Puerto Rico Civil Code, contracts are binding when the following requirements have been met: (1) there has been consent by the contracting parties, (2) there is a definite object of the contract, (3) and there is cause for the parties to assume the obligation. P.R. Laws Ann. tit. 31 § 9771. See also Neca Mortg. Corp. v. A & W Dev. S.E., 137 D.P.R. 860, 871 (1995). Parties are free to enter into any stipulation as long as the agreement is not contrary to the law, morals, or the public order. P.R. Laws Ann. tit. 31 § 9753. Obligations arising from contracts have legal force between the contracting parties. P.R. Laws Ann. tit. 31 § 9754.

According to the evidence submitted by Burlington, as part of her hiring and onboarding process to work at the Canóvanas store, Ms. Silva Durán was given access to the Workday platform. Through that platform, she received information and documentation related to the STEPS program. Specifically, the platform prompted Ms. Silva Durán to review the STEPS Program Materials, including the Early Dispute Resolution Program Rules & Procedures, STEPS Program brochure, and Arbitration Opt-Out Form. These documents were available in English and Spanish. The STEPS Program brochure provided Ms. Silva Durán an overview of the three steps and reminded her of the need to opt-out of STEPS or that she would be automatically enrolled in the program. The Early Dispute Resolution Program Rules & Procedures also provided her an explanation of the three steps and outlined the steps a new employee had to take to opt-out of arbitration. The arbitration agreement in the Early Dispute Resolution Program Rules & Procedures provided that all Burlington employees who did not return the opt-out form within 30 days would be bound by the agreement to arbitrate. Docket No. 5-6 at Step 3 ¶ 3. Paragraph 15 of the Step 3 section of the arbitration agreement further explained Ms. Silva Durán's right to opt-out of arbitration and clarified that arbitration was not a mandatory condition of employment. Id. at ¶ 15. The Arbitration Opt-Out Form provided to Ms. Silva Durán with the STEPS brochure and the Early Dispute Resolution Program Rules & Procedures also reminded Ms. Silva Durán of the timeline for signing and returning the opt-out form. Docket No. 5-6 at p. 15. Ms. Silva Durán was required to electronically acknowledge receipt of the STEPS materials and sign a statement in which she acknowledged that, unless she opted-out by the applicable deadline, she would be bound by the arbitration provisions of the Early Dispute Resolution Program Rules & Procedures. Ms.

Silva Durán was also further advised that by clicking "I Agree," she would be legally bound by her signature. Ms. Silva Durán could not complete the new hire onboarding process until she acknowledged receipt of the STEPS programs materials. And Burlington's records show that Ms. Silva Durán completed her new hire onboarding process in the Workday platform and electronically signed the acknowledgment of receipt of the STEPS Program Materials on April 15, 2021. Docket No. 5-7 at p. 2. Burlington did not receive a signed opt-out form from Ms. Silva Durán.

Plaintiffs have not alleged that Ms. Silva Durán's consent to the arbitration agreement was marred by mistake, fraud, violence, or intimation. See P.R. Laws Ann. tit. 31 § 6191. Rather, Plaintiffs allege that Ms. Silva Durán does not speak English, and that Burlington did not present a signed arbitration agreement. But Plaintiffs did not present any evidence to offset the evidence presented by Burlington. Neither have Plaintiffs questioned Ms. Keefe's knowledge to provide written testimony as to the STEPS program and Burlington's employees' records nor disputed the authenticity of the documentary evidence submitted by Burlington in support of the motion at Docket No. 5. Indeed, Burlington has established that the Early Dispute Resolution Program Rules & Procedures, including the arbitration agreement in those documents, was available to Ms. Silva Durán in both English and Spanish. See Docket Nos. 5-6 at pp. 16-32. And Burlington has also presented evidence that Ms. Silva Durán did provide an electronic acknowledgement of receipt of the STEPS materials and an electronic signature accepting the arbitration agreement in the Early Dispute Resolution Program Rules & Procedures. The law is clear that notifying employees of arbitration agreements by email, requiring their electronic signature, and an acknowledgment of receipt are "acts associated with entering into contracts." Campbell, 407 F.3d at 555-557; see also Caguas Satellite, 824 F.Supp.2d at 313 (consent by electronic acceptance of agreement is valid consent to agreement to arbitrate under Puerto Rico); Colón v. CVS Pharmacy, LLC, 2018 WL 11382333 *2 (D.P.R. May 21, 2018) (electronic signature valid). Importantly, Plaintiffs have also failed to argue, much less presented any evidence, that Ms. Silva Durán was not advised that the agreement to arbitrate would be binding on her and Burlington or that she needed to opt-out, the way in which to carry out the opt-out process, and the timeline in which it had to be done to avoid being bound by arbitration. See Campbell, 407 F.3d at 558 (need to clearly communicate the mandatory nature of the arbitration agreement); García-Clara, 2016 WL 1261058 *4-5 (when opt-out deadlines and binding nature of the arbitration are informed, arbitration is binding).

The second and third factors that must be established by Burlington to compel arbitration are easily met. There is no dispute that, as expressly provided in the arbitration agreement, once Ms. Silva Durán failed to opt-out of the arbitration agreement within the established deadline, Burlington was also bound by the agreement and could seek enforcement of the obligation to arbitrate. See Docket No. 5-6 at STEP 3 ¶3 ("[Y]ou and the Company agree that any legal dispute or controversy covered by these Rules and Procedures or arising out of, relating to, or concerning the validity, enforceability or breach of these Rules and Procedure shall be resolved by binding arbitration. Unless you elect to opt-out of arbitration, both you and the Company are expressly waiving the right to a jury trial."). Caguas Satellite, 824 F.Supp.2d at 314; Colón, 2018 WL 11382333 *3. And Burlington also provided evidence that Ms. Silva Durán completed the onboarding process in the Workday platform, electronically signed the acknowledgment of receipt of the STEPS Program Materials on April 15, 2021, and did not return the signed opt-out form within the required timeline. Ms. Silva Durán is thus bound by the arbitration agreement. Caguas Satellite, 824 F.Supp.2d at 314; Colón, 2018 WL 11382333 *2.

The last factor is whether the claims at issue come within the scope of the arbitration clause. Plaintiffs seek relief for discrimination based on gender and pregnancy under Title VII. Plaintiffs have also asserted supplemental law claims under Law 3 and Law 100. The arbitration agreement between Burlington and Ms. Silva Durán applies to "**any dispute arising out of or related to your employment with or termination from the Company**." Docket No. 5-6 at Step 3 ¶3 (emphasis added). It also includes the following examples of covered claims: "disputes arising out of or related to the employment relationship or the termination of that relationship, […] termination, **discrimination** or harassment and claims arising **under […] Title VII of the Civil Rights Act of 1964 […], state or municipal statutes or regulation addressing the same or similar subject matters, and all other federal, state or municipal legal claims arising out of or relating to your employment** or the termination of employment […]." Id. at ¶ 3a (emphasis added). There is thus no question that the arbitration clause at issue contemplates the claims made by Plaintiffs in this case, including her claims under Title VII and the supplemental law claims under Law 100 and Law 3.

Plaintiffs perfunctorily argue that their claims under Title VII must be addressed in a judicial forum and cannot be subject to arbitration. But the burden is on Plaintiffs to establish that arbitration is precluded by the statute. Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 27

(1991). And Plaintiffs' arguments have already been discarded by the First Circuit in Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 7 (1st Cir. 1999). In Rosenberg, the First Circuit held that Title VII does not prohibit pre-dispute arbitration agreements as there is no conflict between the language or legislative history of Title VII and arbitration and no inherent conflict between the goals of Title VII and those of the FAA. Id. at 8, 11; see also Jorge-Colón, 685 F.Supp.2d at 285 (claims of discrimination based on gender and pregnancy under Title VII and Law 3 subject to arbitration); Colón, 2018 WL 11382333 *3 (employee never opted out of arbitration; employment claims under federal and state laws covered by arbitration provision).

  Plaintiffs also point to three opinions of the Puerto Rico Supreme Court in support of their opposition to the motion to compel arbitration. These are Vélez Miranda v. Servicios Legales de Puerto Rico, Inc., 144 D.P.R. 673 (1998), Medina Betancourt v. La Cruz Azul de Puerto Rico, 155 D.P.R. 735 (2001), and Quiñones González v. Asociación de Condómines Playa Azul II, 161 D.P.R. 668 (2004). But because Plaintiffs failed to submit English translations of those decisions, I cannot consider Plaintiffs' arguments. Local Rule 5(c) of the United States District Court for the District of Puerto Rico; see Puerto Ricans for Puerto Rico Party v. Dalmau, 544 F.3d 58, 67 (1st Cir. 2008) (failure of a party to provide a translated copy of a critical decision to a request is a reason to deny the motion; district court erred by relying on untranslated Spanish language decision of the Puerto Rico Supreme Court); Amvest Corp. v. Mayoral Amy, 778 F. Supp. 2d 187, 201 (D.P.R. Mar. 31, 2011) ("those who wish to rely on materials which are not in English must provide certified English translations of those materials").[1]

  Finally, Plaintiffs posit that the arbitration agreement should not apply to their claims because by the time they filed the complaint Ms. Silva Durán was no longer working at Burlington. Post-expiration arbitrability of disputes depend on whether the dispute has a real source in the contract and whether post-expiration arbitration of the issues was negated expressly or by clear implication. Caguas Satellite, 824 F.Supp.2d at 316 (citing United Parcel Service, Inc. v. Unión de Tronquistas, 426 F.3d 470, 473 (1st Cir. 2005)). There is nothing in the arbitration agreement between Burlington and Ms. Silva Durán to conclude that the arbitration of disputes related to Ms. Silva Durán's employment (including issues of discrimination or termination) with Burlington would be excluded from the agreement once employment ceased. On the contrary, the arbitration

---

[1]  In any event, see Jorge-Colón, 685 F.Supp.2d at 288 (rejecting to follow Medina Betancourt and Playa Azul II).

agreement expressly provides that it extends to "any dispute arising out of or related to your employment with or termination from the Company (including any dispute against any officer, director or alleged agent of the Company), **regardless of its date of accrual and survives after the employment relationship terminates**." Docket No. 5-6, Steps 3 at ¶ 3 (emphasis added).

### III.     Conclusion

For the reasons discussed above, I recommend that Defendants' motion to compel arbitration at Docket No. 5 be **GRANTED** and that the case be stayed pending arbitration. See Smith v. Spizzirri, 601 U.S. 472, 475-476 (2024) (when court finds dispute is subject to arbitration, there is no discretion to dismiss the case; the case must be stayed).

This Report and Recommendation is issued pursuant to 28 U.S.C. §636(b)(1) and Rule 72(d) of the Local Rules of this District Court. Pursuant to Local Rule 72(d), the parties have fourteen (14) days to file any objections to this Report and Recommendation. Failure to file timely and specific objections within the specified time will be deemed a waiver of the right to review by the District Court and those claims not preserved by such objections are precluded on appeal. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccarone, 973 F.2d 22, 31 (1st Cir. 1992).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 4th day of March, 2025.

        s/Giselle López-Soler
        GISELLE LÓPEZ-SOLER
        United States Magistrate Judge