IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ANGELINA SILVA-DURÁN, IAN C. PÉREZ-TOLEDO, **Plaintiffs,** v. BURLINGTON COAT FACTORY OF PUERTO RICO, *et als.*, **Defendants.** | Civil **No.** 24-1193 (FAB) |

OPINION AND ORDER

BESOSA, District Judge.

Before the Court is defendants Burlington Coat Factory of Puerto Rico LLC's ("Burlington") and Burlington Coat Factory Warehouse Corporation's (jointly, "defendants") motion to compel arbitration and stay these proceedings. (Docket No. 5.) The Court referred this motion to Magistrate Judge Giselle López-Soler for a report and recommendation ("R&R"). (Docket No. 6.) Magistrate Judge López-Soler issued a R&R on March 4, 2025, recommending that the Court grant defendants' motion to compel arbitration and stay these proceedings pending arbitration. (Docket No. 18.) For the reasons set forth below, the Court **ADOPTS** the R&R. Accordingly, defendants' motion to compel arbitration is **GRANTED**, and this case is stayed pending the conclusion of the arbitration proceedings.

**I.  Background**

Plaintiff Angelina Silva-Durán ("Silva") began working at Burlington as a part time Cashier Associate in the Canóvanas store on April 15, 2021. (Docket No. 1 at p. 3.) Silva regularly worked 20-25 hours per week. Id. at 4. Silva became aware that she was pregnant in January 2023 and informed her supervisors that same month. Id. She alleges that from June through August 2023, her hours were significantly reduced but that other employees, including male employees, worked their regular hours. Id.

On August 31, 2023, Silva gave birth. The next day, she received a $125 payment from Burlington. Id. at 5. Upon inquiring what the payment was for, Silva was informed that it was the liquidation of her employment. Id.

On April 26, 2024, Silva filed her complaint alleging gender and pregnancy discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e(k),2000e-2. She also asserted supplemental jurisdiction and additional relief under Puerto Rico Law No. 100 of June 30, 1959, as amended, P.R. Laws Ann. tit. 29 §§ 146-151 ("Law 100") and Law No. 3 of March 13, 1942, as amended, P.R. Laws Ann. tit. 29 §§ 467-474 ("Law 3"). Silva and her partner, Ian Pérez-Toledo, request damages suffered on account of the purported discrimination suffered by Silva. Id. at p. 6.

Defendants moved to compel arbitration and to stay these proceedings on June 28, 2024. (Docket No. 5.)  In support of their request, defendants submitted an Unsworn Declaration under Penalty of Perjury by Ann Keefe ("Keefe"), Vice President Stores Human Resources Support of Burlington Coat Factory Warehouse Corporation. (Docket No. 5-1.)  Keefe oversees the administration of Burlington's STEPS program, a dispute resolution program, designed to provide employees multiple opportunities to resolve individual workplace disputes.  Id. at ¶ 7.  Keefe has access to Burlington's STEPS program business records and documentation, including those that pertain to Silva.  Id.

The STEPS program provides employees a three-step process to submit their workplace disputes for resolution.  Id. at ¶ 8.  Employees can exhaust Steps 1 and 2 first or proceed to Step 3 directly.  Id. at ¶ 11.  Step 3 applies when the dispute is not successfully resolved in Steps 1 and 2.  Employees may request arbitration at Step 3.  Id. at ¶ 11.  All Burlington employees, including Silva, are enrolled in the STEPS program as a condition of their employment, but employees may opt-out of the Step 3 arbitration.  Id. at ¶¶ 3, 5, 12.  Employees receive information about the STEPS program through Burlington's electronic hiring and onboarding process.  Id. at ¶ 14.  According to Keefe, Silva's

Civil No. 24-1193 (FAB)                                                    4

employment records show she received information and documentation related to the STEPS program through Burlington's electronic hiring and onboarding process.  Id. at ¶ 15.

When an employee is hired to work at Burlington, he or she is given a unique log-in username and password to enter the Workday platform, which is Burlington's employee management system.  Id. at ¶¶ 17-18.  In that platform, new hires receive and are required to complete new hire documentation.  Id.

As part of the onboarding process, employees receive access to an overview of the STEPS program, which includes a summary of Step 3.  The summary explains that Step 3 involves submitting legal claims to arbitration and that, unless the employee chooses to opt-out of the arbitration program within the required period, the employees will be covered by the arbitration program throughout the entire term of their employment with Burlington, including after the conclusion of their employment.  Id. at ¶¶ 20-23; Docket No. 5-4.  Employees are then instructed to click on the "Your Onboarding Checklist" and complete every task.  Id. at ¶ 25. Employees are instructed to review and provide electronic acknowledgment of receipt of certain documents, including STEPS Program Materials.  Id.  The STEPS Program Materials include the Early Dispute Resolution Program Rules & Procedures, STEPS Program

brochure, and Arbitration Opt-Out Form. <u>Id.</u> at ¶ 28. All of these
are available in English and Spanish. <u>Id.</u> These may be saved by
employees as .pdf documents in their personal computers and may
also be accessed by employees at any time through the Workday
platform. <u>Id.</u> at ¶¶ 26-27.

The Early Dispute Resolution Program Rules & Procedures
provide an explanation of the three steps, and outlines the steps
a new employee must take to opt-out of arbitration. <u>Id.</u> at ¶ 30.
The STEPS Program brochure also provides an overview of the three
steps and reminds employees that they need to opt-out of STEPS or
will be automatically enrolled in the program. <u>Id.</u> at ¶ 29. The
arbitration agreement provides that arbitration is governed by the
Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*. (Docket No. 5-6.)

The agreement is binding on an employee and Burlington, so
long as an employee does not opt-out of arbitration within thirty
(30) days from the date of receipt of the arbitration rules and
procedure. (Docket No. 5-1 at ¶¶ 15, 31.) Employees are required
to electronically acknowledge receipt of the STEPS materials and
to sign a statement in which the employee acknowledges that, unless
he or she opts-out by the applicable deadline, he or she will be
bound by the arbitration provisions of the Early Dispute Resolution
Program Rules & Procedures. <u>Id.</u> at ¶ 40. The employee is also

advised that by clicking "I Agree," he or she is legally bound by that signature. Id. at ¶¶ 40-42. An employee cannot complete the new hire onboarding process until he or she acknowledges receipt of the STEPS program materials. Id. at ¶ 43.

Burlington's records show that Silva completed her new hire onboarding in the Workday platform, and electronically signed the acknowledgment of receipt of the STEPS Program Materials on April 15, 2021. Id. at ¶ 46; see also Docket No. 5-7 at p. 2. Burlington did not receive a signed opt-out form from Silva. (Docket No. 5-1 at ¶¶ 47-48.)

Plaintiffs responded, defendants replied, and plaintiffs sur-replied. (Docket Nos. 9, 12, and 16-1.) Magistrate Judge López-Soler issued a R&R on March 4, 2025. (Docket No. 18.) Plaintiffs filed objections. (Docket No. 20.)

## II. Report and Recommendation Legal Standard

A district court may refer a pending motion to a magistrate judge for an R&R. See 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(a); Loc. Rule 72(b). Any party adversely affected by the R&R may file written objections within fourteen days of being served with the magistrate judge's report. Loc. Rule 72(d). See 28 U.S.C. § 636(b)(1). The movant is entitled to a *de novo* determination of "those portions of the report or specified

proposed findings or recommendations to which specific objection is made." Ramos-Echevarría v. Pichis, Inc., 698 F. Supp. 2d 262, 264 (D.P.R. 2010) (Domínguez, J.); Sylva v. Culebra Dive Shop, 389 F. Supp. 2d 189, 191-92 (D.P.R. 2005) (Vélez-Rivé, Mag. J.) (citing United States v. Raddatz, 447 U.S. 667, 673 (1980)).

Failure to comply with this rule precludes further review. See Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Borden v. Secretary of H.H.S., 836 F.2d 4, 6 (1st Cir. 1987). In conducting its review, the Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636 (a)(b)(1); Templeman v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Álamo Rodríguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp. 2d 144, 146 (D.P.R. 2003) (Domínguez, J.). Furthermore, the Court may accept those parts of the report and recommendation to which the parties do not object. See Hernández-Mejías v. General Elec., 428 F. Supp. 2d 4, 6 (D.P.R. 2005) (Fusté, J.) (citation omitted).

**III. The Federal Arbitration Act**

The Federal Arbitration Act ("FAA") establishes the validity and enforceability of written arbitration agreements. The statute provides that a written arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at

law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congressional policy favors arbitration. 9 U.S.C. § 2; Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443 (2006).

Pursuant to the FAA, courts compel arbitration when the parties have signed a valid arbitration agreement governing the issues in dispute, removing the district courts' discretion over whether to compel arbitration or provide a judicial remedy to the parties. 9 U.S.C. § 4; Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985). The existence of a valid arbitration agreement is based on the consent of the parties to arbitrate at least some of their claims, and to forego a judicial remedy for those claims. McCarthy v. Azure, 22 F.3d 351, 354-55 (1st Cir. 1994) (internal citations omitted). Consequently, a party need not submit to arbitration any dispute it has not agreed to submit. AT&T Techs., Inc. v. Commc'ns. Workers of Am., 475 U.S. 643, 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 583 (1960)).

The First Circuit Court of Appeals has set forth four requirements for a court to compel arbitration: (1) a valid arbitration agreement must exist; (2) the moving party must be entitled to invoke the arbitration clause; (3) the other party must be bound by the clause; and (4) the claim must fall within the

scope of the arbitration clause. <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 142 (1st Cir. 2003). "[Q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitrations." <u>HIM Portland, LLC v. DeVito Builders, Inc.</u>, 317 F.3d 41, 43 (1st Cir. 2003) (quoting <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24 (1983)). "[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." <u>Moses H. Cone Mem'l Hosp.</u>, 460 U.S. at 24-25.

## IV. Discussion

The magistrate judge, after careful consideration of the record, determined that there was a valid arbitration agreement between Silva and Burlington, that both parties are bound to arbitrate, that Burlington can seek enforcement of the arbitration clause, that the claims made by plaintiffs are covered under the arbitration clause, and that the agreement survives after the employment relationship terminates. (Docket No. 18 at pp. 7-10.)

In response, plaintiffs make the following objections to the R&R: (1) there is no valid agreement because Silva cannot understand English and therefore, her consent is invalid; (2) there

is no valid agreement because Burlington failed to provide Silva's signature or initials validating and accepting the documents in their motion; and (3) Burlington acted in bad faith because it knew Silva had filed a grievance with the Department of Labor of Puerto Rico ("DOL"), and failed to bring Silva into the STEPS program until this case was filed.  (Docket No. 20.)

### A.   Validity of the Arbitration Agreement

State contract law governs the validity of an arbitration agreement under the first prong of the InterGen N.V. test.  Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 456, 551 (1st Cir. 2005).  Under Puerto Rico law, the elements of a valid contract are the following:  (1) the consent of the contracting parties; (2) a definite object of the contract; and (3) the cause for the obligation.  P.R. Laws Ann. tit. 31, § 3391. Under Puerto Rico law, consent of a party is invalid only if "given by error, under violence, by intimidation, or deceit."  P.R. Laws. Ann. Tit. 31, § 3404; Sánchez-Santiago v. Guess, Inc., 512 F. Supp. 2d 75, 79 (D.P.R. 2007).

Plaintiffs' first objection is that Silva could not have consented because she does not read or understand English.  This seems to be an argument that she consented in error under P.R. Laws Ann. Tit. 31, § 6191.  The parties dispute whether Silva in

fact received a Spanish-language version of the agreement. Whether she received it or not, the validity of a contract and of the consent is presumed, therefore, to annul the consent, the affected party's error must be excusable. Citibank Glob. Mkts., Inc. v. Rodríguez Santana, 573 F.3d 17, 24 (1st Cir. 2009) (citing Capo Caballero v. Ramos, 83 D.P.R. 650, 1961 P.R. Supp. LEXIS 464 (1961)). "When the ignorance of the true state of things is due to negligence or fault of the one who invokes it," the error is not excusable. See id. "[I]t is a general and well-established principle of contract law that one who is ignorant of the language in which a document is written, or who is illiterate, may be bound to a contract by negligently failing to learn its contents. Soto v. State Indus. Prods., Inc., 642 F.3d 67, 78 (1st Cir. 2011). Silva was aware she did not understand English. If Burlington did in fact fail to provide a document in Spanish, as she alleges, she also failed to request one. Accordingly, the fact that Silva did not understand the agreement she signed because of her lack of fluency in English does not render void her consent to arbitrate. See id.

   **B.  Proof that Silva Executed Agreement**

        Plaintiffs' second objection is that Burlington failed to provide a copy of Silva's initials or signature that she

accepted the documents.  While Burlington did not provide the documents with Silva's signature, it did provide, as the magistrate judge found, evidence of Silva's electronic acknowledgment of receipt of the STEPS documents and that, by checking the box, she would be bound to arbitrate her claims unless she opted out within the required deadline.  (See Docket No. 5-7 at 2.)  "Signing an acknowledgement or, in a more modern context, clicking a box on a computer screen, are acts associated with entering into contracts." Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 557 (1st Cir. 2005); see also Caguas Satellite Corp. v. EchoStar Satellite LLC, 824 F.Supp.2d 309, 313 (D.P.R. Nov. 8, 2011) (Besosa, J.).

### C.  Waiver

        Silva's final objection is that Burlington acted in bad faith because, though it knew Silva had filed a grievance with the DOL, they failed "to bring Silva to the [STEPS] early dispute resolution program" until this case was filed.  (Docket No. 20 at p. 5.)  This seems to be an argument that Burlington waived its right to compel arbitration because it failed to begin arbitration when Silva filed a grievance with a state agency.  The First Circuit Court of Appeals has stated, however, that "an employer cannot waive its right to arbitrate by failing to raise the

arbitration defense with the EEOC or by failing to initiate arbitration during the pendency of the EEOC proceedings." <u>Marie v. Allied Home Mortg. Corp.</u>, 402 F.3d 1, 16 (1st Cir. 2005). The Court also held, "[w]e hold only that an employer should not be forced to file arbitration during an EEOC investigation by finding a waiver of its right to arbitrate if it does not make such a filing." <u>Id.</u> at n.13. Therefore, the fact that Burlington did not begin an arbitration when it learned Silva filed a grievance with the DOL does not amount to waiver. <u>See</u> <u>Ramos v. Amgen Mfg. Ltd.</u>, No. 10-1486; 2011 WL 2971197, at *1 (July 20, 2011) (García-Gregory, J.) (finding employer did not waive arbitration because it did not move for arbitration during the administrative proceedings before the Department of Labor Antidiscrimination Unit).

     Plaintiffs have not objected to the magistrate judge's finding that both parties are bound by the agreement, that Silva's claims come within the scope of the clause, and that the agreement survives after the employment relationship terminates. <u>Davet</u>, 973 F.2d at 30-31. Nevertheless, the Court has made an independent examination of the entire record and agrees with the magistrate judge's reasoning. Because plaintiffs set forth no manifest error of law, the Court **ADOPTS** the R&R. (Docket No. 18.) Accordingly,

Civil No. 24-1193 (FAB)                                                  14

defendants' motion to compel arbitration and stay these
proceedings is **GRANTED.** (Docket No. 5.)

## V.    Conclusion

For the reasons set forth above, the Court **ADOPTS** the March 4,
2025 Report and Recommendation. (Docket No. 18.) Accordingly,
defendants' motion to compel arbitration and pending arbitration
(Docket No. 5) is **GRANTED,** and this case is **STAYED** pending the
conclusion of the arbitration proceedings.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 26, 2025.


                                    s/ Francisco A. Besosa
                                    FRANCISCO A. BESOSA
                                    SENIOR UNITED STATES DISTRICT JUDGE